UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

Jean Forte,

                    Plaintiff,                    09-CV-2358
                                                  (RJD)(JMA)
    - against -
                                                  MEMORANDUM OPINION
                                                  AND ORDER
Lutheran Augustana Extended Care and
Rehabilitation Center, David Rose,
individually and as an agent of Lutheran
Augustana Extended Care and Rehabilitation
Center, and Dwight Simmons, individually
and as an agent of Lutheran Augustana
Extended Care and Rehabilitation Center,

                    Defendants.

------------------------------------------X

DEARIE, Judge.

    Plaintiff Jean Forte commenced this action on July 8, 2008

in New York Supreme Court, Richmond County against defendants

Lutheran Augustana Extended Care and Rehabilitation Center

("Lutheran"), David Rose ("Rose"), individually and as an agent

of Lutheran, and Dwight Simmons ("Simmons"), individually and as

an agent of Lutheran, (collectively, "Defendants").  Plaintiff

alleges (1) slander *per se* by defendants Lutheran and Rose; (2)

violation of the Family and Medical Leave Act, 29 U.S.C. § 2601,

*et seq.*, ("FMLA") by Lutheran for terminating Plaintiff's

employment in retaliation for Plaintiff's leave of absence

pursuant to FMLA; (3) battery by defendant Simmons; and (4)

violation of the New York State Human Rights Law and the

Administrative Code of the City of New York by Lutheran for

retaliating against Plaintiff for reporting sexual harassment. Defendants removed the action to this Court on June 4, 2009.[1] Presently before the Court is Defendants' motion to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(5) for failure to timely serve process in accordance with New York C.P.L.R. § 306-b, or alternatively for dismissal of Plaintiff's slander *per se* claims pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendants' motion to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(5) is granted and Defendants' motion to dismiss the slander *per se* claims is denied as moot.

## BACKGROUND

The following facts are derived from the Complaint and from the parties' submissions in connection with the motion to dismiss.[2]

Factual Allegations in the Complaint

Plaintiff was hired by Lutheran on or about October 26, 2006 as Coordinator of Staff Development/Chairperson for Quality Improvement. Compl. ¶ 7. On approximately November 29, 2007, Plaintiff was informed by her physician that she had an ovarian

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1441 based on Plaintiff's FMLA allegation.

[2] In deciding a Rule 12(b)(5) motion, a court "must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service." *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (internal quotation marks omitted).

cyst requiring immediate surgery. *Id.* ¶ 9. Plaintiff underwent surgery for the removal of a tumor and bladder reparation in December, 2007. She took leave from work pursuant to FMLA. *Id.* ¶ 10. Upon returning from leave, Plaintiff was treated coldly by her supervisors, including defendant Rose, and was given an unreasonably large workload, including tasks beyond her job requirements. *Id.* ¶¶ 11, 12.

On or about February 8, 2008, defendant Simmons allegedly placed his finger under Plaintiff's skirt and fondled her buttocks. *Id.* ¶ 13. Plaintiff reported the incident to defendant Rose and another supervisor, Elena Lopez, but they were dismissive of Plaintiff's complaint. *Id.* ¶ 14. Plaintiff then reported the incident to Wendy Goldstein, whom Plaintiff believed to be a supervisor of defendant Rose. *Id.* ¶¶ 15, 16. Plaintiff's superiors changed her work schedule. *Id.* ¶ 17.

During Plaintiff's FMLA leave, the Board of Health discovered deficiencies at Lutheran and requested that Lutheran institute a "Plan of Corrections" in response to the Board of Health's "Statement of Deficiencies."[3] *Id.* ¶¶ 18, 19. Lutheran was unable to immediately acquire the Statement of Deficiencies and it was not within the scope of Plaintiff's duties or authority to acquire the Statement of Deficiencies or create a

---

[3] The Complaint does not describe the deficiencies discovered by the Board of Health.

Plan of Corrections in response thereto. *Id.* ¶¶ 20-21. When Plaintiff asked the acting director whether any corrective measures should be taken in anticipation of the Statement of Deficiencies, she was told it was best to wait until the Statement of Deficiencies was issued. *Id.* ¶¶ 23-24. At a subsequent Plan of Corrections meeting, defendant Rose told Plaintiff he was disappointed that she had not taken measures to remedy the deficiencies. *Id.* ¶ 25.

As part of the Plan of Corrections, Plaintiff was tasked with conducting a class for employees on an evacuation plan. Plaintiff alleges that she was given a deadline for completing the assignment that was not feasible because of the varied schedules and departments of the employees and *per diem* workers. *Id.* ¶¶ 26-27. As an interim measure, Plaintiff was authorized by the acting director to distribute instructional pamphlets concerning the information to be covered in the evacuation plan class. Pursuant to the authorization of the director, Plaintiff gave the instructional pamphlets to defendant Rose's secretary "to type." *Id.* ¶¶ 28-29.

On or about March 27, 2008, defendant Rose told Plaintiff he was disappointed that she did not complete the evacuation class and asked if Plaintiff had created a lesson plan and test. Plaintiff responded that she had created a lesson plan and test and attempted to explain that the director, Angela Pezza, was

aware of the situation. Plaintiff claims that defendant Rose sarcastically responded that Plaintiff was blaming Ms. Pezza. *Id.* ¶¶ 30-31.

On April 1, 2008, defendant Rose summoned Plaintiff to his office and told her that having Ms. Decaro[4] "going around" with the instructional pamphlets was fraudulent. *Id.* ¶¶ 32-33. Plaintiff responded that defendant Rose himself had signed the Plan of Corrections as complete. *Id.* ¶ 35. Plaintiff claims that defendant Rose made additional false statements "to the effect that Plaintiff did not do her job" and then terminated her employment. *Id.* ¶ 36. Susan Wittich, Director of Human Resources at Lutheran, was present in defendant Rose's office and witnessed the conversation. *Id.* ¶¶ 32, 37.

Shortly after firing Plaintiff, defendant Rose announced in front of a group of nurses that Plaintiff was terminated because she "did not do her job." *Id.* ¶ 38.

Factual Allegations about the Commencement of this Action

Plaintiff filed this action on July 8, 2008. It is undisputed that Defendants were each served with the Summons and Complaint on May 6, 2009, nearly ten months after the action was filed.

Regarding the delay in service, Plaintiff's attorney states the following:

---

[4] The Complaint does not state who Ms. Decaro is.

[D]uring the period of time in question in this matter Plaintiff's counsel was undergoing drastic changes in his practice. Specifically Plaintiff's counsel was subjected to an economic decline which caused [Plaintiff's counsel] to relocate his office. In addition [Plaintiff's counsel is] a solo practitioner and was appointed as Administrative Law Judge for the City of New York in September of 2008 and thereafter began to downsize his practice. Hence in February of 2009 [counsel's] paralegal and long-time secretary left the practice to secure more full time and steady employment.

Pl.'s Am. Aff. in Opp'n. ¶ 2.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(5) authorizes dismissal of a complaint for insufficient service of process upon motion by a defendant made prior to the defendant's filing an answer. When a defendant raises a challenge to the sufficiency of service of process, "the plaintiff bears the burden of proving its adequacy." *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002).

The propriety of service is determined under New York law because Plaintiff served process on Defendants prior to removal of the action to this Court. *PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07-CV-10680, 2009 WL 859084, at *3 (S.D.N.Y. Mar. 31, 2009). New York C.P.L.R. § 306-b provides that service of the summons and complaint must be made within 120 days after filing. If service is not made on a defendant within that time period, "the court, upon motion, shall dismiss the action without prejudice as to that defendant, or upon good cause shown or in

the interest of justice, extend the time for service." C.P.L.R. § 306-b.

Given the filing date of July 8, 2008, pursuant to C.P.L.R. § 306-b, service on Defendants was to be made by November 5, 2008. It is not disputed that Defendants were served on May 6, 2009, six months after the 120-day period prescribed by C.P.L.R. § 306-b expired. Accordingly, the Court may dismiss the action without prejudice or extend the time for service "upon good cause shown or in the interest of justice." C.P.L.R. § 306-b.

Good Cause

In order to establish good cause for an extension of time for service a plaintiff must show "reasonably diligent efforts" to serve defendants within the allotted time frame. *Leader v. Maroney, Ponzini & Spencer*, 97 N.Y.2d 95, 105 (N.Y. 2001); *PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07-CV-10680, 2009 WL 859084, at *3 n.3 (S.D.N.Y. Mar. 31, 2009). Plaintiff has not alleged any efforts at service prior to May 6, 2009, six months after the 120-day period expired. *See* Pl.'s Am. Aff. in Opp'n. ¶ 2. Good cause has not been shown.

The Interest of Justice

Without "good cause," the Court may still extend the time for service "in the interest of justice." C.P.L.R. § 306-b. The New York Court of Appeals in *Leader v. Maroney*, 97 N.Y.2d 95 (N.Y. 2001), explained that the "interest of justice standard

requires a careful judicial analysis of the factual setting of the case and a balancing of the competing interests presented by the parties." *Id.* at 105-06. The *Leader* court delineated six factors courts may consider to determine whether an extension should be granted in the interest of justice: "diligence, or lack thereof, . . . expiration of the Statute of Limitations, the meritorious nature of the cause of action, the length of delay in service, the promptness of a plaintiff's request for the extension of time, and prejudice to defendant." *Id.* at 105-06. No one factor is determinative. *Id.* at 106.

As an initial matter, Plaintiff's reasons for why service was not completed in the allotted time frame are facially insufficient. Plaintiff's counsel reports that issues with his law practice prevented timely service.[5] However, law office failures cannot serve as a basis for granting an extension of time for service in the interest of justice.[6] *Moulden v. White*, 45 A.D.3d 1495 (N.Y. App. Div. 2007); *see also Riccio v. Ghulman*,

---

[5] According to the Amended Affirmation in Opposition, Plaintiff's counsel could not effect service because he was "subjected to an economic decline which caused [him] to relocate his office," he "began to downsize his practice" after September, 2008 when he was appointed an administrative law judge, and in February, 2009 his "paralegal and long-time secretary left the practice." Pl.'s Am. Aff. in Opp'n. ¶ 2.

[6] It is also noted that at least two of counsel's reasons for the delay in service are unpersuasive in their own right. Counsel's appointment as an administrative law judge in September, 2008 and consequent "downsizing" occurred well after the Complaint was filed, and the loss of his paralegal and secretary in February, 2009 is irrelevant because the service deadline was November 5, 2008.

29 A.D.3d 558, 560 (N.Y. App. Div. 2006).[7]

A balancing of the factors listed in *Leader*, 97 N.Y.2d at 105-06, also reveals that an extension of time to serve the Complaint is not warranted in the interest of justice.

    1.   <u>Diligence, Length of Delay in Service and Promptness of Plaintiff's Request for the Extension of Time</u>

As noted, Plaintiff has not shown diligence in attempting to serve Defendants within the 120-day time period, and did not serve Defendants until six months after the deadline lapsed. Plaintiff also did not request an extension of time to serve Defendants. Rather, Plaintiff simply stated in the Amended Affirmation in Opposition that time to serve the Complaint should be extended. Accordingly, the factors of diligence, length of delay in service and promptness of the plaintiff's request for an extension of time weigh in favor of Defendants. *See Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007);[8] *Riccio v. Ghulman*, 29 A.D.3d 558, 560 (N.Y. App. Div. 2006) (failure to seek an extension of time to serve until after a motion to dismiss was made weighs against granting an extension in the

---

[7] In support of an extension of time for service, Plaintiff cites only *Campbell v. Starre Realty Co.*, 283 A.D.2d 161 (N.Y. App. Div. 2001). *Campbell* is not persuasive. In that case, the attorney's law firm dissolved and the delay in service was "slight." Here, Plaintiff attorney's law firm did not dissolve and service was completed six months past the deadline, which is more than a "slight" delay.

[8] Courts may look to "federal case law analysis of rule 4(m) of the Federal Rules of Civil Procedure" for application of factors relevant to "interest of justice" determinations under C.P.L.R. § 306-b. *Leader v. Maroney, Ponzini & Spencer*, 97 N.Y.2d 95, 106 (N.Y. 2001).

interest of justice).

## 2. Expiration of the Statute of Limitations

The parties agree that if the action is dismissed based on Plaintiff's untimely service, the statute of limitations would bar Plaintiff from refiling her claims for slander *per se* and battery.[9] Plaintiff contends that the expiration of the statute of limitations weighs against dismissal for untimely service. However, while expiration of the statute of limitations is a factor that may counsel toward granting an extension of time to serve, it does not automatically do so. *Jervis v. Teachers Ins. & Annuity Ass'n*, 696 N.Y.S.2d 378, 381 (N.Y. Sup. Ct. 1999). "[E]ven when the Statute of Limitations has expired, to warrant an extension of the time to serve the summons and complaint, the plaintiff must show, at a minimum, reasonable diligence in attempting to effectuate service." *Id.*

The one-year statute of limitations expired before Plaintiff served Defendants, there has been no showing of diligence and there has been no contention that Defendants had notice of the claims prior to service. Accordingly, the expiration of the

---

[9] The parties do not contend that the statute of limitations for any of Plaintiff's other claims has expired, and Plaintiff does not include in the Complaint specific sections of New York State's human rights law or the Administrative Code of the City of New York. *See* Compl. ¶ 52. However, the Court notes that New York Human Rights Law, N.Y. Exec. Law § 297, provides a one-year statute of limitations period. The Court therefore considers that Plaintiff's state human rights law claims may be barred from refiling if this action is dismissed.

statute of limitations weighs in favor of dismissal rather than extension of time to serve. *See Zapata*, 502 F.3d at 198-99 (defendant's lack of notice of the claim and service effected almost three months after the limitations period weigh in favor of dismissal); *Jervis*, 696 N.Y.S.2d at 381.

### 3. Meritorious Nature of the Claims

The Court is unable to fully evaluate the merits of the claims based solely on the Complaint. However, it is Plaintiff's burden to prove that an extension of time to serve should be granted and Plaintiff failed to submit an affidavit by someone with firsthand knowledge of the underlying facts relevant to the claims. As such, consideration of the meritorious nature of the claims does not favor Plaintiff. *Marion v. Notre Dame Acad.*, 133 A.D.2d 614, 615 (N.Y. App. Div. 1987) (attorney's affirmation and the complaint verified by the attorney were insufficient to demonstrate merit of the claims because neither was submitted by someone with firsthand knowledge of the underlying facts); *Jervis*, 696 N.Y.S.2d at 381 (failing to extend time for service when there had been no submission of affidavits demonstrating the merits of the claims).

Plaintiff also contends that defendants Rose and Lutheran committed slander *per se* because at the meeting in which defendant Rose fired Plaintiff, defendant Rose said that Plaintiff engaged in "fraud" and "said some other false things to

the effect that Plaintiff did not do her job." Compl. ¶¶ 32-37.
Plaintiff also alleges that after she was terminated, defendant
Rose "announced in front of a group of nurses that Plaintiff was
terminated because she did not do her job." Compl. ¶ 38.

Under New York law, statements made in the employment
context concerning the qualifications and actions of employees
are subject to a qualified privilege. *Aquilone v. Republic Nat'l
Bank*, No. 98 Civ. 5451, 1998 WL 872425, at *3 (S.D.N.Y. Dec. 15,
1998), *disagreed with on other grounds*, *McCavitt v. Swiss
Reinsurance Am. Corp.*, 237 F.3d 166 (2d Cir. 2001). Here, the
statements at issue were made in the employment context and
concerned the reasons Plaintiff was fired. The statements are
covered by the qualified privilege. *See id.* (statements by
defendant employees suggesting that plaintiff was terminated for
taking kickbacks and bribes covered by the qualified privilege).

To overcome the qualified privilege, Plaintiff must allege
that the statements were made with actual malice. *Id.* Regarding
this requirement, Plaintiff makes only a conclusory assertion
that the statements were made "with an improper motive amounting
to malice and spite caused by bias and . . . in conscious
disregard of Plaintiff's rights." Compl. ¶ 41. The slander *per
se* claims would not be meritorious because Plaintiff failed to
allege facts from which malice could be plausibly inferred. *See
Aquilone*, at *3 (granting a motion to dismiss based on the

qualified privilege when malice could not be inferred from the alleged facts); *Boyle v. Stiefel Labs., Inc.*, 204 A.D.2d 872, 875 (N.Y. App. Div. 1994) (same); *Hollander v. Cayton*, 145 A.D.2d 605 (N.Y. App. Div. 1988) (granting motion to dismiss and stating: "The mere conclusory allegations by the plaintiff herein that the statements were maliciously motivated is insufficient to defeat the claim of qualified privilege").

4.   Prejudice to Defendants

There is no evidence that Defendants would be prejudiced by extending the time for service.  In an effort to prove prejudice, Defendants point only to the expired statute of limitations for the slander *per se* and battery claims.  Defs.' Mem. Supp. Mot. to Dismiss at 6; Reply Mem. Supp. Defs.' Mot. to Dismiss at 7.  The statute of limitations, however, has already been considered in favor of Defendants, *see supra*, and there is no specific evidence of prejudice regarding any of Plaintiff's claims.  Accordingly, the lack of demonstrated prejudice weighs in favor of Plaintiff.

On balance, the factors provided in *Leader*, 97 N.Y.2d at 105-06, weigh in favor of Defendants and against an extension of time to serve the Complaint.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P.

12(b)(5) is granted without prejudice and Defendants' motion to dismiss the slander *per se* and battery claims pursuant to Fed. R. Civ. P. 12(b)(6) is denied as moot.  The clerk is directed to transmit a filed copy of the within to all parties and the Magistrate Judge.


SO ORDERED.

Dated:    Brooklyn, NY
          December  8, 2009

                              By: _____
                                   s/ Judge Raymond J. Dearie
                                   United States District Judge